## DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON.

---

[No. 5973. Decided February 26, 1906.]

## THE STATE OF WASHINGTON, *Respondent,* v. BURT McFADDEN, *Appellant.*[1]

CRIMINAL LAW—ASSAULT—THREATS. A person may be guilty of assault and battery where he advances toward another threatening to "put him out of his misery," and at the same time deliberately drawing a revolver from his pocket which is taken from him by the bystanders after some considerable effort; and the question of his guilt or innocence is one for the jury.

CRIMINAL LAW—INFORMATION—LOSS AND SUBSTITUTION—COSTS. Where an information is lost, the substitution of a new information at the trial, which is given a new case number, is not an institution of a new prosecution, and it is not error to tax against the defendant the costs of the original proceeding.

CRIMINAL LAW — ASSAULT — EVIDENCE — ADMISSIBILITY. Upon a prosecution for an assault made by advancing upon the prosecuting witness and drawing a revolver, evidence that the defendant on the day after the occurrence stated that he "mighty near killed" the prosecuting witness, is admissible upon the issue as to whether the violence was only menaced or was actually begun.

Appeal from a judgment of the superior court for Kittitas county, Rigg, J., entered May 29, 1905, upon a trial and conviction of assault. Affirmed.

*Pruyn & Slemmons,* for appellant, to the point that drawing a pistol without presenting or using it, is not an assault,

1Reported in 84 Pac. 401.

cited: *Lawson v. State,* 30 Ala. 14; *Mulligan v. People,* 5
Park C. C. (N. Y.) 105; *State v. Baker,* 20 R. I. 275, 38
Atl. 653, 78 Am. St. 863; 1 McClain, Criminal Law, p. 199,
§ 232; *People v. Dodel,* 77 Cal. 293, 19 Pac. 484. And so
the act of picking up a stone with the intention of throwing
it to injure another, is not assault. 1 McClain, Criminal Law,
§ 225; *Brown v. State,* 95 Ga. 481, 20 S. E. 495.

*Austin Mires,* for respondent, contended, that a clear in-
tent to commit violence, accompanied by acts which if not
interrupted will be followed by personal injury, constitutes
an assault. Bishop, Criminal Law (7th ed.), pp. 14, 15;
*People v. Yslas,* 27 Cal. 631; 1 McClain, Criminal Law, pp.
199, 200; *Johnson v. State,* 35 Ala. 363, 365; *State v. Davis,*
1 Ired. (N. C.) 125, 35 Am. Dec. 735; *People v. McMakin,*
8 Cal. 547.

Fullerton, J.—The appellant was informed against for
the crime of assault with a deadly weapon with intent to
inflict upon the person of another a bodily injury. On the
trial the jury found him guilty of a simple assault, and from
the judgment entered against him thereon he appeals.

The first contention made by the appellant is that the evi-
dence is insufficient to sustain the verdict; the precise conten-
tion being that the facts shown do not constitute an assault.
From the record it appears that, on the day named in the
information, the prosecuting witness and the appellant met
on the streets in the city of Ellensburg, and engaged in a
personal altercation, to stop which the city marshall took
the prosecuting witness into custody. The appellant there-
upon went to the place where his belongings were placed,
and procured a revolver and announced his intention to
shoot the prosecuting witness. He then proceeded to the
place where the prosecuting witness had been taken by the
marshall, and, on seeing him, made an exclamation to the
effect that he would put him out of his misery, and at the
same time advanced towards him proceeding to draw the re-

volver from the pocket in which he carried it. At this point
he was interrupted by the by-standers, and his revolver taken
from him, after some considerable effort. These, in brief,
are the acts shown by the state, and it seems to us that they
plainly constitute an assault.

An assault is defined by the code to be an attempt in a
rude, insolent and angry manner unlawfully to touch, strike,
beat, or wound another person, coupled with a present ability
to carry such attempt into execution. While it is true that
under this definition of an assault, as under the common law
definition of that offense, there must be some physical effort
to carry into execution the violence menaced before it can
be said an assault has been committed, it is also true that
the question does not depend upon the degree of effort put
forth, nor upon how far the defendant had gone towards the
accomplishment of his purpose. The line between violence
menaced, and violence actually begun may be a narrow one,
yet when it is apparent that the defendant's acts if not stopped
or diverted will lead to the corporal hurt of another, the exe-
cution of the purpose has begun, and there is a sufficient at-
tempt to satisfy the definition of the statute. Here it seems
to us clear that the acts of the defendant had proceeded be-
yond mere menaces. He not only made threats of violence,
but he advanced towards the person threatened, proceeded
to draw his revolver, and ceased only from his design when
compelled to cease by the interference of third persons. This
was at least an apparent attempt to carry into execution the
violence menaced; and the question of the defendant's guilt
or innocence was properly submitted to the jury.

When the case was called for trial, it was discovered that
the information was missing. After search it was believed
to be irretrievably lost, whereupon the court permitted an-
other information to be filed in the place of the missing one.
This last information was given a new case number by the
clerk of the court, the defendant was required to plead
anew thereto, and the case proceeded as if a new proceeding

had been instituted. The appellant now insists that it was the institution of a new proceeding against him, and that the court erred in taxing against him the cost of the original proceeding, and the costs of the preliminary examination on which the first information was based. But we think the appellant is mistaken in asserting that the filing of the second information was the institution of a new proceeding. This was in effect a mere continuation of the original case. If in any stage of a criminal proceeding the indictment or information becomes lost or destroyed the court has power to direct a substitution. The substituted indictment or information should be a correct copy of the original if possible, but if the data on hand is not sufficient from which to make an exact copy, a copy as near as may be is sufficient. To substitute was in effect what was done in this case. While the court took the precaution to require the defendant to plead over, this was unnecessary. It would have been proper for the court to have ordered the substitution made and directed the case to continue as if on the original information. But since the procedure followed had this effect it was not error to tax the costs of the entire proceeding to the defendant as part of the judgment imposed upon him.

The court permitted the state to show that the appellant had stated, when speaking of the alleged assault, on the next day after its occurrence, that "he mighty near killed George Simpson" (Simpson being the prosecuting witness). It was objected to this in the court below that it was immaterial and did not tend to prove any of the issues in the case, and this contention is made in this court. The statement was properly admitted. One of the issues in the case was whether the acts of the appellant was violence only menaced, or violence actually begun, and to determine this the purpose of the appellant at the time the alleged assault was made was a material inquiry. This evidence tended to show the appellant's purpose at that time, and was admissible for that reason.

The instructions of the court were fair, and we find no error in any of the matters complained of in the assignments pertaining to them. The judgment is affirmed.

MOUNT, C. J., HADLEY, ROOT, CROW₂ and DUNBAR, JJ., concur.