IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RUDOLPH ERIC FINNE,

Appellant.

No. 85839-4-I

DIVISION ONE

UNPUBLISHED OPINION

CHUNG, J. — Rudolph Finne challenges his conviction for assault in the second degree, asserting there was insufficient evidence to support the mens rea prerequisite of the crime. We disagree and affirm.

FACTS

Rudolph Finne and Rebekah Murray were intermittent romantic partners. On July 10, 2022, Finne and Murray went to a restaurant and bar in Burien. Although the beginning of the evening seemed enjoyable, Finne's mood steadily became more hostile toward Murray.

Meanwhile, Candice Nessmith, a woman unknown to either Finne or Murray before the incident, went to the same restaurant after she got off work, around 12:45 or 1 a.m. on July 11, 2022. When she was ordering a drink at the bar, Nessmith noticed a couple she did not recognize, later identified as Finne and Murray, in a "one-sided argument," with Finne berating Murray. Later, when she saw them again on the back patio, Nessmith intervened and told Finne to calm down and that the way he was talking to Murray "wasn't very appropriate."

In response, Finne got "into [Nessmith's] face" and told her to mind her own business. Thereafter, Nessmith went to the other side of the patio and eventually went back in to the bar, finished her drink, talked with some people she knew, and left around 1:15 a.m.

As she exited the restaurant, she saw Finne and Murray once more, standing near a car with the driver's side door open. Murray had her back to the open driver's side door and Finne was facing her and was "right up in [Murray's] face." While watching them, Nessmith overheard Finne say to Murray, "[I]f you don't take me back to the house, I'm going to fucking kill you."

Nessmith walked closer to the couple, asked Murray if she was okay, and told Finne the way he spoke to Murray was inappropriate and unnecessary. Nessmith testified that Finne then turned around, put his hand to Nessmith's throat, and pushed her to the ground. Nessmith realized the situation was more dangerous than she previously thought. She rose to her feet and attempted to approach Murray again to get them both inside the restaurant. During this second approach, Finne turned toward Nessmith and threw her to the ground, saying, "[Y]ou don't know who the fuck I am." Nessmith testified that after this second fall, she felt pain in her knee and was unable to stand back up. While Nessmith was on the ground, she stated she received further blows to her left thigh, but she could not determine whether it was punches or kicks.

Murray attempted to restrain Finne as he hit Nessmith, but was unsuccessful. After about ten minutes, Nessmith and Murray were able to reenter the restaurant after a passerby distracted Finne. Shortly after Murray and

2

Nessmith entered the restaurant, King County Sheriff's deputies arrived, a bystander pointed out Finne, and Finne was arrested.

Nessmith was treated by medics at the scene, and the paramedics recommended she go to a hospital. Medical imaging showed that she had a fractured tibia, requiring surgery.

Finne was charged with assault in the second degree of Nessmith and assault in the fourth degree of Murray. A jury convicted Finne of assault in the second degree of Nessmith and found him not guilty of assault in the fourth degree of Murray. Finne filed a timely appeal.

DISCUSSION

Finne asserts there was insufficient evidence to support the jury verdict. Specifically, Finne argues the State failed to prove mens rea, i.e., that Finne had a state of mind that showed recklessness or intent to inflict injury. We disagree.

Due process requires that the State prove every element of a crime beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). To determine whether sufficient evidence supports a conviction, an appellate court must "view the evidence in the light most favorable to the prosecution and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." State v. Homan, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Salinas, 119

Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences must be interpreted in favor of the State and most strongly against the defendant. Id. We defer to the trier of fact on "issues of witness credibility." State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014).

For the State to convict Finne of assault in the second degree, it needed to prove that Finne (1) intentionally assaulted Nessmith and (2) thereby recklessly inflicted substantial bodily harm. RCW 9A.36.021(1)(a). Assault is "an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person."[1] A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime. RCW 9A.08.010(1)(a). "Criminal intent may be inferred from all the facts and circumstances surrounding the commission of an act." State v. Brooks, 107 Wn. App. 925, 929, 29 P.3d 45 (2001) (citing State v. Lewis, 69 Wn.2d 120, 123, 417 P.2d 618 (1966)). Additionally, intent may be inferred from circumstantial evidence, and a jury may infer or permissively presume a defendant intends "the natural and probable consequences of his or her acts." State v. Bea, 162 Wn. App. 570, 579, 254 P.3d 948 (2011) (citing State v. Caliguri, 99 Wn.2d 501, 506, 664 P.2d 466 (1983)).

---

[1] State v. Villanueva-Gonzalez, 180 Wn.2d 975, 982, 329 P.3d 78 (2014) (citing 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 547 (5th ed. 2021)). As the term "assault" is not defined in the criminal code, courts use common law to define the term. State v. Krup, 36 Wn. App. 454, 457, 676 P.2d 507 (1984). Washington courts recognize three common law definitions of "assault." State v. Smith, 159 Wn.2d 778, 781-82, 154 P.3d 873 (2007). The jury instruction in Finne's trial reflects the definition stated in Villanueva-Gonzalez. See Clerk's Papers at 16 (jury instruction no.7) ("An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.").

"A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). "There is both a subjective and an objective component to the mens rea of 'recklessness.' " State v. Melland, 9 Wn. App. 2d 786, 804, 452 P.3d 562 (2019) (quoting Rich, 184 Wn.2d at 904). Sufficiency of the evidence of recklessness " 'depends on both what the defendant knew and how a reasonable person would have acted knowing these facts.' " Melland, 9 Wn. App. 2d at 804 (internal quotation marks omitted) (quoting State v. Graham, 153 Wn.2d 400, 408, 103 P.3d 1238 (2005)).

Here, when viewed in a light most favorable to the State and assumed true, the evidence was sufficient to establish that Finne intentionally assaulted Nessmith. The jury heard testimony from Murray that Finne grew increasingly agitated throughout the night that the assault happened. The jury also heard from both Nessmith and Murray that each time Nessmith attempted to intervene on Murray's behalf, Finne redirected his anger toward Nessmith. Nessmith and Murray both testified that when Nessmith intervened in the parking lot, Finne threw her to the ground. Nessmith further recounted that after she got up and attempted to approach Murray and get them both into the restaurant, Finne shoved her to the ground a second time and continued to punch or kick her until a bystander lured Finne away. Any rational jury could conclude beyond a reasonable doubt that in light of Finne's growing anger with Nessmith over the

evening, by grabbing, shoving, and hitting Nessmith, he intended the natural and probable consequence of his acts, i.e., a harmful or offensive touching, as required to prove the first element of intentional assault.

Furthermore, the State provided sufficient evidence that Finne recklessly caused Nessmith substantial bodily harm. Finne claims that "[n]othing in the record shows what Finne knew of or that he disregarded a substantial risk that a wrongful act may occur," and that Nessmith told her orthopedic surgeon, Dr. Peters Otlans, during a medical exam that Finne pushed her twice, and the second push injured her knee. Finne asserts the evidence does not show recklessness but instead merely "showed Defendant Finne caused a[n] injured leg." However, Finne ignores the standard for a sufficiency claim, which requires that a reviewing court "view the evidence in the light most favorable to the prosecution," Homan, 181 Wn.2d at 105, and "admit[] the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201.

This case is unlike Melland, in which the court concluded that if the only evidence was that the defendant caused the injury, this was insufficient to prove that the defendant "knew of and disregarded a substantial risk that he would fracture [the victim's] finger when he grabbed the phone from her hand." 9 Wn. App. 2d at 805. Here, by contrast, there is ample evidence beyond merely the fact of Nessmith's injuries that Finne chooses to ignore in his briefing. Murray and Nessmith testified that Finne threw Nessmith down onto a concrete parking lot and then shoved her a second time. Nessmith testified more specifically that

Finne grabbed her by her neck and threw her to the ground and that he also hit or kicked her while she was on the ground. A reasonable person would know that grabbing a person and throwing or shoving them onto concrete presents a substantial risk that substantial bodily harm will result. Moreover, a reasonable person would not disregard this substantial risk by repeating the action or kicking or punching the person when they are on the ground. Finne's acts show a gross deviation from conduct a reasonable person would exercise in the same situation. Thus, viewing the evidence in the light most favorable to the State and assuming it to be true, any rational jury could find beyond a reasonable doubt that Finne acted recklessly to cause Nessmith substantial bodily harm.

CONCLUSION

We conclude a reasonable trier of fact could find beyond a reasonable doubt that Finne intentionally assaulted Nessmith and recklessly inflicted substantial bodily harm. We affirm the conviction of assault in the second degree.

_Chung, J._

WE CONCUR:

_Feldman, J._                    _Smith, C.J._